IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| THE ROCK PLACE II, INC., | ) | **Case No.** |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | |
| vs. | ) | **TRIAL IN OMAHA,** |
| | ) | **NEBRASKA** |
| WOODSONIA-204 CENTER, LLC, | ) | |
| JEFF ELLIOT, ANDREW A. SNYDER, | ) | |
| TANYA MAINELLI, CARSON STRATMAN, | ) | |
| SANDI HOLLINGSWORTH, SANITARY | ) | |
| AND IMPROVEMENT DISTRICT NO. 596, | ) | |
| and JANE AND JOHN DOES, | ) | |
| | ) | **JURY DEMANDED** |
| Defendants. | ) | |

Plaintiff submits the following Complaint against the Defendants:

## JURISDICTION AND VENUE

1. Plaintiff invokes this Court's jurisdiction under 28 U.S.C. § 1343(a)(1), 28 U.S.C. § 1343(a)(3), and 28 U.S.C. § 1331. This action is authorized and instituted pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, §§ 3 & 21 of the Nebraska Constitution.

2. This Court has personal jurisdiction and venue is proper under 28 U.S.C. §§ 1391(b)(1) & (2) because the Defendants reside in this district and the events giving rise to Plaintiff's claims occurred in this district.

1

## PARTIES

3.      Plaintiff the Rock Place II, Inc. ("RP II") is a Nebraska corporation registered to do business in and doing business in Elkhorn, Douglas County, Nebraska.

4.      Defendant Woodsonia-204 Center, LLC ("Woodsonia") is a Nebraska Limited Liability Company formed on January 25, 2018 to develop the subdivision and private development known as the West Center Village project ("West Center Village").

5.      Upon information and belief, Defendant Jeff Elliot ("Elliot") is a resident of Douglas County, Nebraska.

6.      Upon information and belief, Defendant Andrew A. Snyder ("Snyder") is a resident of Douglas County, Nebraska.

7.      Upon information and belief, Defendant Tanya Mainelli ("Mainelli") is a resident of Douglas County, Nebraska.

8.      Upon information and belief, Defendant Carson Stratman ("Stratman") is a resident of Douglas County, Nebraska.

9.      Upon information and belief, Defendant Sandi Hollingsworth ("Hollingsworth") is a resident of Douglas County, Nebraska.

10.     Defendant Sanitary and Improvement District No. 596 ("SID 596") is a political subdivision of the State of Nebraska, that upon information and

belief, was created to serve as the alter ego for Woodsonia, Elliot, Stratman, Hollingsworth, and/or Snyder on November 14, 2018 to: 1) defraud the City of Omaha into approving the West Center Village and related rezoning and re-platting of Woodsonia's real property; 2) condemn privately held property rights to aid their private development without paying fair market value or just compensation; 3) profit from their private development, while passing the costs of the same to third parties through the abuse and misuse of eminent domain power and the power to specially assess; 4) destroy and harm RP II's business; 5) violate and interfere with RP II's property and constitutional rights, interests, and expectancies; and 6) intimidate and retaliate against private parties while acting under the power and color of law.

11. Defendants Jane and John Does are individuals that have yet to be discovered or identified who acted in concert with, in conjunction with, and conspired with some or all of the Defendants to circumvent and violate RP II's constitutional, contractual, and other rights.

## FACTS AND BACKGROUND

## THE ROCK PLACE

12. RP II operates the Rock Place business located at 3405 South 204th Street, Elkhorn, Nebraska 68022 (the "Property"). The Rock Place supplies rock,

topsoil, nursery related items, and landscaping materials to the general

public, contractors, and others.  The Rock Place business has operated on the

Property continuously since approximately 1991.

13.   RP II does not own the Property.  THG Development, LLC (the "Owner")

owns the Property.  RP II leases portions of the Property from the Owner to

operate the Rock Place.

### APPROVAL OF SID 596 AND WEST CENTER VILLAGE

14.   Woodsonia is the owner of real property adjacent to the Property, upon

which West Center Village is being developed by Defendants.

15.   West Center Village is not a public project, but a private project that will

benefit Woodsonia, Snyder, Elliot, Mainelli, Stratman, and/or

Hollingsworth.

16.   On or about November 14, 2018, Woodsonia, Elliot, Stratman,

Hollingsworth, and Snyder created SID 596 so they could aid their private

development through fraud, the abuse and misuse of eminent domain power,

the power to assess, and the color of law, including through threats,

intimidation, and legal process, the acquisition of private property rights that

were not for sale, and unlawful attempts to impugn third parties with the

costs of their private development that they obligated themselves to pay.

17.   Woodsonia, Snyder, Elliot, Mainelli, Stratman, and Hollingsworth needed

      permission from the Douglas County, Nebraska District Court (the "State

      Court") to create SID 596 and filed a Petition to do so on November 15,

      2018.

18.   As part of the Petition, Woodsonia, Snyder, Elliot, Mainelli, Stratman,

      and/or Hollingsworth provided the State Court with SID 596's Articles of

      Association, which contained representations that all of the owners of real

      estate located within SID 596 were included within and consented to the

      formation of SID 596.  The Articles of Association submitted to the State

      Court are attached as Exhibit A.

19.   As part of the Petition, Woodsonia, Snyder, Elliot, Mainelli, Stratman,

      and/or Hollingsworth represented to the Court, that as *all* of the owners of

      the real property located within SID 596, they would be obligated to pay for

      all improvements and special assessments related to SID 596.  Article VIII

      of Association states:

> ***The undersigned owners and all owners of real estate within
> the District are willing and obligate themselves to pay the tax
> or taxes which may be levied against all of the property in the
> District and special assessments against the real property
> benefitted which may be assessed against them***, to pay the
> expenses that may be necessary to install a sewer, or water
> system, or both a sewer and water system, the cost of
> contracting for fire protection and resale to the residents of the
> District, the cost of grading, changing grade, paving, repairing,
> graveling, re-graveling, widening or narrowing sidewalks and

5

> roads, resurfacing or relaying existing paving, or otherwise improving any public roads, streets, or highways within the District, and the cost of installing gas and electric service lines and conduits, the cost of acquiring, improving and operating public parks, playgrounds and recreational facilities, and the cost of installing and maintaining a civil defense warning system, as provided by law and all other costs and expenses incurred by the District as provided by law.

(Exhibit A, Pg. 2) (emphasis added).

20.    The State Court relied upon the representations, including those made in the

Articles of Association, and approved the formation of SID 596 on

November 16, 2018.

21.    To develop West Center Village, Woodsonia, Snyder, Elliot, Mainelli,

Stratman, and Hollingsworth needed the approval of the City of Omaha (the

"City").

22.    To grant approval of West Center Village, the City imposed numerous

requirements and conditions that are set forth in a Subdivision Agreement

between the City, Woodsonia, the West Center Village Owners Association,

and SID 596.  A copy of the Subdivision Agreement approved on or about

October 22, 2018 is contained within Exhibit B.

23.    Among other things, the City required that the specific costs of

improvements related to West Center Village be disclosed to and approved

by the City (Exhibit B, Pg. 22) and that Woodsonia and SID 596 agree, in

advance, as to how the specific costs of improvements would be paid,

assessed, and allocated, and the parties and/or properties responsible for

payment.  (Exhibit B, Pg. 1, 7 – 9, § II, Pg. 22).

24.    The Subdivision Agreement states, in pertinent part:

> WHEREAS, the parties wish to agree upon the manner and the
> extent to which public funds may be expended in connection
> with public improvements to be constructed within the area to
> be developed or serving the area to be developed and the extent
> to which the contemplated public improvements specially
> benefit property in the area to be developed and to what extent
> the cost of same shall be specially assessed.

(Exhibit B, Pg. 5).

25.    Woodsonia and SID 596 were further required to, and specifically agreed,

that only *their properties* located within SID 596 could ever be specially

assessed for the cost of improvements for West Center Village.  The

Subdivision Agreement states, in pertinent part:

> ***all of said District's levy of special assessments shall be made
> in such a manner so as to assure that the entire burden of the
> levy is borne, on an equitable basis, by lots or parcels which
> are truly building sites***. If any lot, parcel or other area within
> the area to be developed is not a building site by reason of
> insufficient size or dimensions, or by reason of easements or
> similar burdens, or for any other reason, then no portion of the
> total amount shall be levied against said unbuildable lot, parcel
> or other area.

(Exhibit B, Pg. 10, § V, ¶ B) (emphasis added).

26.    The City was obviously ensuring that Defendants could not and would not

pass the costs of their private development to other properties or taxpayers

and that only buildable lots within the development could ever be specially assessed for improvements.

27.    The Defendants also knew and acknowledged that they could only specially assess property located within SID 596.  The Published Notice of SID 596's approval of the Subdivision Agreement, attached hereto as Exhibit C, states:

> The outer boundaries of the area which may become subject to special assessments for said improvements are proposed to be the same as the outer boundaries of Sanitary and Improvement District No. 596 of Douglas County, Nebraska.

(Exhibit C, Pg. 1).

28.    The City relied upon the representations of Woodsonia, Snyder, Elliot, Mainelli, Stratman, and/or Hollingsworth, including those made in the Subdivision Agreement, by allowing West Center Village and rezoning and re-platting Woodsonia's real property on or about November 20, 2018.

(Exhibit B, Pg. 1).

## CONDEMNATION OF THE OWNER BY SID 596 AND DAMAGE TO THE ROCK PLACE BUSINESS

29.    On February 19, 2019, Woodsonia, Snyder, Elliot, Mainelli, Stratman, and/or Hollingsworth caused SID 596 to file a petition to condemn portions of the Property in fee simple and for a temporary construction easement (the "Condemnation").  The Condemnation was brought only against the Owner

and did not name RP II.  The Condemnation is ongoing before the State Court at Case No. 19-2434.

30.    The actions of Defendants have caused severe damage to RP II's business. During the lengthy construction period overseen and directed by Defendants, RP II's business suffered consistent damage, harm, and disruption.  RP II's business could not be sufficiently utilized because Defendants' construction and access were not competently designed or implemented in a safe, consistent, open, organized, or workmanlike manner.

31.    The actions of Defendants have further caused permanent damage, harm, and disruption to RP's business, including through the loss of usable operating and retail space that requires costly and complicated relocation and restaging of the products and most of the business operations and substantial regrading and earthwork.

32.    As a result of the actions of Defendants, there is much less room and usable property available for scales and inventory, storage, customer access, appropriate security measures, and product display.

33.    Defendants' road design and implementation was inadequate, sloppy, incompetent, and dangerous and substantially impaired ingress, egress, and access to the Property and business operations.

34.    As a result of the actions of Defendants, the current access is narrower and more restrictive, inadequate to serve the needs of the Rock Place, and potentially unsafe for semi-trucks and traffic.  There have been many occasions since Defendants' alterations where semi-trucks have suffered damage to their vehicles, been unable to make deliveries, have gotten stuck, have almost collided with other vehicles, have refused to make deliveries because of safety concerns, and have been unable to make the turn coming into the Property.

35.    Since the alterations by Defendants, RP II has received multiple complaints from semi-truck drivers that the access is unsafe and dangerous and multiple warnings from semi-truck drivers that if the access is not improved or made safer that they will no longer attempt to access RP II's business.

36.    The Defendants also negligently designed and installed a retaining wall that creates a 14-foot vertical drop and the loss of significant usable space.  The retaining wall continues to deteriorate and needs to be replaced.

37.    Significant corrective work is necessary just to minimize some damage and harm caused by the Defendants and permit the Rock Place to continue to operate ("the Corrective Work").

38.    The Corrective Work includes substantial dirt work and re-grading, relocating the inventory, stockpiled soils, paved displays, concrete bins, and

industrial scales, adding fencing and signage, constructing alternative parking, and modifying security measures.

39.    The cost of the Corrective Work could be as high as $2,200,000 upon completion.

40.    Real estate professionals have determined that the Corrective Work is critical for the continued operation of the Rock Place.

41.    The Defendants have impeded efforts to return the Property and RP II's business operations to the conditions they were in prior to Defendants' interference.

42.    The Defendants, through an agent, including on April 3, 2020, May 8, 2020, and May 15, 2020, have represented to the State Court in the Condemnation that RP II's business is a non-conforming use and that engaging in the Corrective Work "is legally prohibited," would violate the Omaha Municipal Code, and would not be permitted by the City.

43.    The Defendants, through an agent, have contacted and represented to the City, including its Planning Director, that RP II's business is a non-conforming use and that engaging in the Corrective Work "is legally prohibited" and would violate the Omaha Municipal Code.

44.    If the Corrective Work is legally prohibited as Defendants contend or the Rock Place has become a non-conforming use, then Defendants' actions

have effectively destroyed RP II's business, which has operated

continuously and conspicuously under a Certificate of Occupancy issued by

the City since 1991.

## DEFENDANTS LEVY SPECIAL ASSESSMENTS UPON RP II FOR THE COST OF THEIR DEVELOPMENT

45.    On July 14, 2020, the Defendants, through an agent, issued a Notice of

Special Levy, pursuant to Neb. Rev. Stat. § 31-752, assessing RP II with

$723,425.61 in alleged special benefits related to the West Center Village

Development.

46.    On July 23, 2020, Defendants filed a lawsuit against the Owner and RP II in

State Court seeking to collect special assessments from RP II and requesting

a judgment against RP II in the amount of $723,425.61 for improvements

related to West Center Village.

47.    Defendants Woodsonia, Snyder, Elliot, Mainelli, Stratman, and

Hollingsworth are attempting to make RP II pay for the improvements that

they agreed to pay as a condition to the District Court approving SID 596

and the City approving West Center Village and the re-platting and rezoning

of Woodsonia's real property.

## FIRST CAUSE OF ACTION:
## UNLAWFUL TAKING AND DAMAGE AGAINST SID 596

48.    The foregoing paragraphs are incorporated by reference.

49. SID 596 has damaged, effectively taken, and interfered with RP II's property rights, leasehold interest, business operations, relations, and expectancies.

50. SID 596 possesses the power of eminent domain.

51. SID 596 has failed to institute condemnation proceedings against RP II.

52. Under both the United States and Nebraska Constitutions, RP II is entitled to just compensation for the property rights that were taken or damaged by SID 596, plus interest, costs, attorney fees, and all relocation and other benefits afforded by the Uniform Relocation Assistance and Real Property Acquisition Policies for Federal and Federally Assisted Programs Act codified beginning at 42 U.S.C. § 4601.

## SECOND CAUSE OF ACTION:
## VIOLATION OF DUE PROCESS AGAINST ALL DEFENDANTS

53. The foregoing paragraphs are incorporated by reference.

54. Defendants have violated the procedural and substantive due process rights of RP II guaranteed under Federal and State law, including 42 U.S.C. § 1983, the Fifth and Fourteenth Amendments to the United States Constitution, and Article 1, §§ 3 & 21 of the Nebraska Constitution.

55. RP II has been denied its rights, among other things: 1) to due process before its property rights could be taken or damaged; 2) to be justly compensated for property rights taken or damaged; 3) requiring SID 596 to negotiate with

RP II in good faith before condemning or damaging its property rights; and 4) to be named in the Condemnation regarding the Property.

56.    Defendants have forcibly condemned and/or harmed RP II's property interests (without offering, let alone providing, any compensation) and are now trying to make RP II pay Defendants $723,425.61 for doing so.

57.    On July 14, 2020, the Defendants, through an agent, issued a Notice of Special Levy, pursuant to Neb. Rev. Stat. § 31-752, assessing RP II with $723,425.61 in alleged special benefits stemming from their private development.

58.    On July 23, 2020, Defendants filed a lawsuit against RP II seeking to collect $723,425.61 in special assessments from and a judgment against RP II in the amount of $723,425.61 for alleged damages related to improvements for West Center Village.

59.    The Property is not located in SID 596 and the Rock Place does not operate within SID 596. "Thus, a general purpose local government entity cannot impose special assessments outside its political boundaries and a special purpose local government entity, such as an improvement district, cannot impose special assessments outside the district boundaries."

§ 24:26. Extraordinary types of property—Property outside boundary of assessing entity, 4 Local Government Law § 24:26.

60.    The Defendants know that Nebraska law does not permit them to levy

special assessments on properties located outside SID 596.  The Resolution

from a January 10, 2019 meeting of SID 596, attached hereto as Exhibit D,

resolves, in pertinent part:

> *to the extent special assessments have been or are to be levied*
> *for any of said improvements*, *such special assessments have*
> *been or are to be levied under Nebraska law* as a matter of
> general application *to all property specially benefited* by said
> improvements *in the District*.

(Exhibit D, Pg. 5) (emphasis added).

61.    Nebraska law also does not permit a sanitary and improvement district to

specially assess a tenant.  *See* Neb. Rev. Stat. § 31-752.

62.    Defendants' actions further constitute a fundamental violation of the Fifth

Amendment to the United States Constitution and Article I, Section 21 of the

Nebraska Constitution, which both entitle a party to just compensation for

any property rights taken from them or damaged.

63.    The law permits, at most in rare circumstances, an offset for pled and proven

special benefits against the amount of just compensation.  However, under

no circumstances can special benefits exceed the amount of just

compensation paid or require the condemnee to pay the condemnor.  The

applicable Nebraska jury instruction regarding special benefits expressly

reads:

15

> Special benefits cannot do more than reduce the plaintiff's
> compensation for any decrease in the fair market value of (his,
> her, its) remaining property. That is, if the monetary value of
> the special benefit is greater than the decrease in the fair market
> value of the remaining property, the plaintiff cannot be required
> to pay money to the defendant.

1 Neb. Prac., NJI2d Civ. 13.10.

64.    Assuming *arguendo* only that SID 596 could ever legally assess special

benefits against anyone other than itself, including because of the

representations to the District Court and the agreement with the City, any

offset for special benefits claimed by SID 596 needed to be placed at issue

and determined within the Condemnation.

65.    SID 596 was even successful in convincing the Board of Appraisers in the

Condemnation to offset the amount of just compensation due to the Owner

based upon the costs of the same improvements it has now assessed against

RP II.

66.    Acting under color of law and statutory authority, Defendants are unlawfully

seeking a windfall and ***triple*** recovery. Defendants expressly agreed to be

obligated for all special assessments related to West Center Village,

Defendants then offset those improvements from the just compensation

owed to the Owner, and now the Defendants seek to collect an additional

$723,425.61 from RP II.

67. West Center Village is the private project of Defendants Woodsonia, Snyder, Elliot, Mainelli, Stratman, and Hollingsworth and they alone are responsible for any costs associated with it by law and pursuant to their agreement with the City.

68. Defendants conspired to subvert RP II's rights and undermine the Condemnation to aid their private development without paying fair market value or just compensation, to unlawfully assess the costs of their private development through a special assessment levy made under color of law, including Neb. Rev. Stat. § 31-752, and to destroy and harm RP II's business.

69. As a result of Defendants' actions, RP II's has suffered damages.

### THIRD CAUSE OF ACTION:
### VIOLATION OF EQUAL PROTECTION UNDER THE LAW AGAINST ALL DEFENDANTS

70. The foregoing paragraphs are incorporated by reference.

71. The Fourteenth Amendment to the Constitution of the United States and Article I, § 3 of the Nebraska Constitution guarantee equal protection under the laws.

72. RP II is being discriminated against and treated differently than similarly situated person, entities, and tenants.

73. RP II also constitutes a "class of one."

74.    Upon information and belief, RP II is likely the only tenant in the State of Nebraska who has been assessed with special assessments.

75.    Upon information and belief, RP II is likely the only tenant in the State of Nebraska who has had their property rights taken or damaged by an entity possessing the power of eminent domain, not provided or offered any compensation, and demanded to pay money to the condemning entity.

76.    There is no rational, legal, or constitutional basis for the difference in treatment of RP II to those similarly situated.

**FOURTH CAUSE OF ACTION:**
**VIOLATIONS OF 42 U.S.C. § 1985 AGAINST ALL DEFENDANTS**

77.    The foregoing paragraphs are incorporated by reference.

78.    Defendants violated 42 U.S.C. § 1985(2) by conspiring to hinder, obstruct, and deter, including by intimidation and threat, RP II from testifying in the Condemnation and attempting to injure RP II for testifying in the Condemnation.

79.    Defendants violated 42 U.S.C. § 1985(2) by conspiring to impede, hinder, obstruct, and defeat the due course of justice with intent to deny RP II equal protection of the laws and to injure RP II for attempting to enforce its rights by failing to offer or provide RP II just compensate for property rights taken or damaged, by failing to permit RP II to exercise its rights to due process regarding the property rights that were taken or damaged by Defendants, by

unlawfully attempting to force, though intimidation, threat, and color of law, RP II to pay $723,425.61 to Defendants, and by impeding efforts to mitigate damages caused by Defendants' interference.

80.   Defendants violated 42 U.S.C. § 1985(3) by conspiring to deprive and depriving RP II of rights and privileges guaranteed to it as a citizen of the United States and injuring RP II as a result of it exercising rights and privileges guaranteed to it as a citizen of the United States.

## DEMAND FOR JURY TRIAL

81.   RP II hereby demands a trial by jury on all claims so triable.

82.   Pursuant to Local Rule 40.1(b), RP II requests the trial be held in Omaha, Nebraska.

WHEREFORE, Plaintiff requests relief as follows:

A.   A judgment against Defendants, jointly and severally, for all past, present, and future general and special damages, pre- and post-judgment interest, punitive damages, and statutory damages in an amount to be determined at trial.

B.   Attorney fees, appraisal fees, expert fees, and costs as may be allowed by law, including 42 U.S.C. § 1988.

C.   Such other and further relief as is just and necessary.

THE ROCK PLACE II, INC., Plaintiff

By:      */s/ Jason M. Bruno*
         Jason M. Bruno, NE #23062
         James L. Schneider, NE #25825
         SHERRETS BRUNO & VOGT LLC
         260 Regency Parkway Drive, St. 200
         Omaha, NE  68114
         (402)390-1112 Telephone
         (402)390-1163 Facsimile
         law@sherrets.com
         ATTORNEYS FOR PLAINTIFF