IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| THE ROCK PLACE II, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>WOODSONIA-204 CENTER, LLC, JEFF ELLIOT, ANDREW A SNYDER, TANYA MAINELLI, CARSON STRATMAN, SANDI HOLLINGSWORTH, SANITARY AND IMPROVEMENT DISTRICT NO. 596, and JANE AND JOHN DOES,<br><br>Defendants. | 8:20-CV-304<br><br><br>MEMORANDUM AND ORDER |

## I. INTRODUCTION

The Rock Place II, Inc., ("Rock Place") has sued Woodsonia-204 Center, LLC, ("Woodsonia"), Sanitary and Improvement District No. 596 ("SID 596"), and members of SID 596's Board of Trustees ("Board Members"). Rock Place's remaining claims are for an unlawful taking against SID 596 and for malicious prosecution against Woodsonia and the Board Members. Before the Court is SID 596's Motion for Partial Summary Judgment.[1] Filing 59. The Court will also address SID 596's Motion to Strike Rock Place's Brief in Opposition and Index in Opposition to SID 596's Motion for Partial Summary Judgment, Filing 76, and Rock Place's Motion for Rule

---

[1] The Court is not yet considering Woodsonia and the Board Members' Motion for Partial Summary Judgment, Filing 63, in this order because it is not ripe for review.

1

11 Sanctions. Filing 82. For the reasons stated herein the Court denies SID 596's Motion for Partial Summary Judgment, denies SID 596's Motion to Strike, and denies Rock Place's Motion for Rule 11 Sanctions.

## II. BACKGROUND

This case arises from SID 596's eminent-domain proceedings against THG Development, LLC, the owner of property in which plaintiff Rock Place holds a leasehold interest. THG Development, a nonparty, owns approximately 20 acres of land in Elkhorn, Nebraska. Filing 61-1 at 4. Rock Place leases this property from THG Development to operate its landscaping-supply business.[2] Filing 72-1 at 1-2. SID 596 is a political subdivision of Nebraska located in Douglas County.[3] Filing 61-2 at 1. It appears that only part of the 20 acres of land owned by THG Development is within SID 596's corporate boundary. Filing 61-2 at 4 (describing how improvements constructed by SID 596 benefitted the property owned by THG Development that is outside of SID 596's corporate boundary).

Sometime in early 2019, SID 596 began preparing to develop the land near THG Development's property. Filing 61-1 at 88. The development included extending a street and constructing an additional access drive to THG Development's property. Filing 61-1 at 38. Part of this development extended onto the portion of THG Development's property that is within SID 596's corporate boundary. Filing 61-1 at 88. Thus, SID 596 needed to condemn part of THG Development's property if it wanted to proceed with construction.

---

[2] Defendant Woodsonia is the owner and developer of real estate directly north of Rock Place. Filing 31 at 2-3; Filing 61-1 at 63.

[3] Sanitary and improvement districts, or SIDs, are local governmental units formed under Nebraska statutes that "install and maintain public improvements such as streets, sewers, utility lines, and other improvements associated with residential and commercial subdivisions." *Sanitary & Improvement Dist. No. 67 of Sarpy Cnty. v. Dep't of Roads*, 961 N.W.2d 796, 800 (Neb. 2021).

On February 14, 2019, SID 596 commenced an eminent-domain proceeding against THG Development in Nebraska state court. Filing 61-2 at 2. SID 596 sought a fee simple acquisition of about one-third of an acre of THG Development's property and a temporary construction easement of two acres. Filing 61-1 at 38, 88. According to Defendants, at the time the eminent-domain proceedings began, they were unaware that Rock Place had a leasehold interest in THG Development's property. Filing 61-2 at 2. Thus, Defendants did not join Rock Place in the eminent-domain proceedings. Filing 61-2 at 3. During the eminent-domain proceedings, SID 596 filed a petition to appoint a board of appraisers to determine the value of the part of THG Development's property being condemned. Filing 61-1 at 104. The state court granted the petition and appointed three appraisers who determined that the value of the property was $56,390.00. Filing 61-1 at 106-09, 121-22. SID 596 deposited this amount with the state court. Filing 61-1 at 131.

On April 12, 2019, THG Development appealed the appraisal to the Douglas County District Court and requested that a jury determine the fair market value of the land. Filing 61-1 at 135–37. Defendants refer to this appeal as "THG's Condemnation Proceeding." Filing 60 at 8. Both parties agree that this action is ongoing and awaiting a date for trial by jury. Filing 61-1 at 9; Filing 71 at 23.

Sometime in 2020, SID 596 constructed and maintained several public improvements pursuant to a vote by the Board Members. Filing 61-2 at 4. Because the Board Members believed that the public improvements benefitted the portion of THG Development's property located outside SID 596's corporate boundary, they prepared to levy a special assessment pursuant to

3

Nebraska Revised Statute § 31-752.[4] Filing 61-2 at 4. By this time, SID 596 had become aware of Rock Place's leasehold interest of THG Development's property. Filing 61-1 at 11. Therefore, SID 596 allegedly notified THG Development and Rock Place of its intent to levy a special assessment. Filing 61-2 at 4.

On July 23, 2020, SID 596 filed a special-assessment action against THG Development and Rock Place in Nebraska state court, requesting that the court set the amount of the special assessment against THG Development and Rock Place and to impose a superior lien on THG Development's property. Filing 61-2 at 4-5. THG Development filed a separate suit in Nebraska state court to "Declare Special Assessment Determination Invalid, Illegal, and Void," which was consolidated with SID 596's special-assessment lawsuit. Filing 61-1 at 10. The state court ultimately dismissed Rock Place from the suit with prejudice.[5] Filing 61-1 at 240-47. This special-assessment suit remains pending. Filing 61-1 at 10.

According to Rock Place, it "has suffered and continues to suffer damages" resulting from SID 596's taking of the property in which it has a leasehold interest. Filing 72-1 at 3. Rock Place claims that it has been damaged in three ways: (1) by SID 596 taking fee simple title to the part of THG Development's property that Rock Place leases, (2) by SID 596's temporary construction easement on the property rented by Rock Place, and (3) by the negative consequences to Rock Place's business caused by SID 596's construction. Filing 72-1 at 3–6. Rock Place further contends that SID 596's actions have disrupted the operation of its business and will require significant work to rectify. Filing 72-1 at 4-7.

---

[4] Section 31-752 allows a sanitary and improvement district to levy a special assessment against a property owner when the property owner's property "has been specially benefited" by improvements constructed by the sanitary and improvement district. Neb. Rev. Stat. § 31-752.

[5] The Court dismissed Rock Place from the special assessment proceeding because it was not the owner of the allegedly benefitted property. Filing 61-1 at 243–45. A special assessment may only be enforced against the owner of the benefitted property. *See* Neb. Rev. Stat. § 31-752.

On October 12, 2020, Rock Place filed its amended complaint against Defendants. Filing 31. After the Court partially granted Defendants' Motion to Dismiss, Filing 44, only Counts I and VII remain in this case. In Count I, Rock Place seeks damages for SID 596's allegedly unlawful taking of Rock Place's interest in THG Development's property. Filing 31 at 11. In Count VII, Rock Place brings a malicious prosecution claim based on Defendants attempting to levee a special assessment against Rock Place. Filing 31 at 19. SID 596 filed a motion for summary judgment on Count I on July 28, 2021.[6] Filing 59. On September 10, 2021, Defendants filed their Motion to Strike Rock Place's Brief and Index in Opposition to SID 596's Motion for Summary Judgment. Filing 76. Rock Place filed a Motion for Rule 11 Sanctions on September 21, 2021. Filing 82.

### III. ANALYSIS

#### A. Standard of Review

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment

---

[6] The Board Members and Woodsonia filed a motion for summary judgment on Count VII on August 13, 2021, Filing 63, which the Court is not considering in this order.

5

motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves." Se. *Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "an absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (citing *Celotex*, 477 U.S. at 323). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than 'the mere existence of *some* alleged factual dispute'" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

### B. SID 596's Motion to Strike

SID 596 moves to strike parts of Rock Place's Index of Evidence, an affidavit from Michael Haffke, and Rock Place's Brief in Opposition to SID 596's Motion for Summary Judgment. The Court denies SID 596's Motion to Strike.

Federal Rule of Civil Procedure 12(f) provides, "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are ill-favored and sparingly granted." *Fed. Deposit Ins. Corp. v. Coble*, 720 F. Supp. 748, 750 (E.D. Mo. 1989) (citing *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir.1977)).

SID 596 first requests that the Court strike the supplemental statement of facts in Rock Place's Brief in Opposition. Filing 76 at 2. Rock Place's supplemental statement of facts contains allegations related to Rock Place's claimed damages. Filing 71 at 33–36. According to SID 596, any reference to Rock Place's damages is irrelevant because SID 596's Partial Motion for Summary Judgment does not challenge that Rock Place has suffered damages. Filing 76 at 2. SID 596 argues that, if the facts are not stricken SID 596 "will be required to adduce substantial evidence . . . simply to controvert a damage claim that is . . . not at issue at this time." Filing 76 at 3. The Court disagrees. If the facts are truly irrelevant[7] to SID 596's Motion for Partial Summary Judgment, then they will have no bearing on the resolution of that motion and need not be stricken. *See Gilbee v. RJW Transp., Inc.*, No. 1:10-CV-0060-SNLJ, 2010 WL 4974863, at *2 (E.D. Mo. Nov. 24, 2010) ("If allegations are redundant or immaterial, they should be stricken only if prejudicial to the moving party" (citing *Stanbury L. Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000)). As the Court will properly execute its duty to consider the facts which are material to the issues at hand, there is no prejudice to SID 596 in not striking the allegedly irrelevant facts. *See Stanbury*, 221 F.3d at 1063 ("[S]triking a party's pleadings is an extreme measure . . . .").

---

[7] In fact, whether Rock Place has suffered damages is relevant to its takings claim. *See Slusarski v. Platte Cnty.*, 416 N.W.2d 213, 216 (Neb. 1987). ("[W]hen a political subdivision with the power of eminent domain *damages* property for a public use, the property owner may seek damages . . . in an action for inverse condemnation . . . ." (emphasis added)).

7

SID 596 next argues that Rock Place's claims that it gave "open, notorious and continuous notice to the public of [Rock Place's] leasehold interest" are unsubstantiated and vague. Filing 76 at 4. Arguing that claims are "unsubstantiated and vague" is an insufficient reason to move to strike. *See* Fed. R. Civ. P. 12(f). ("The court may strike from a pleading an insufficient defense or any *redundant, immaterial, impertinent, or scandalous* matter." (emphasis added)). Such arguments could be more appropriately addressed in a reply brief.

Finally, SID 596 makes "[o]bjections to Haffke's Declaration." Filing 76 at 8. SID 596 contends numerous paragraphs in Haffke's Declaration contain irrelevant statements and hearsay. Filing 76 at 8-9. If this evidence is truly hearsay, then it will have no effect on resolving SID 596's Motion for Partial Summary Judgment because "inadmissible hearsay evidence cannot be used to defeat summary judgment" and the Court thus will not rely on it in resolving the pending motion. *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 817 (8th Cir. 2010) (citing *Brooks v. Tri–Sys., Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005)). Furthermore, as set forth above, the Court need not strike any irrelevant facts. Irrelevant facts will simply have no bearing on the Court's resolution of the motion for summary judgment and will therefore not prejudice SID 596. Thus, the Court denies SID 596's Motion to Strike in full.

### C. SID 596's Motion for Partial Summary Judgment

SID 596's Motion for Partial Summary Judgment seeks judgment in its favor on Rock Place's claim for damages for an unlawful taking. Filing 60 at 1. SID 596 argues that Rock Place had notice of SID 596's eminent-domain proceedings in state court and did not intervene. Filing 60 at 26. Because Rock Place did not intervene in the eminent-domain proceedings, SID 596 contends Rock Place cannot now maintain an action for "inverse condemnation."[8] Filing 60 at 26-

---

[8] Inverse condemnation is "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant." *United States v. Clarke*, 445 U.S. 253, 257 (1980).

27. Alternatively, SID 596 asserts that there has been no taking because THG's condemnation proceeding, which challenges the appraisal of the part of THG Development's property being condemned, is still pending. Filing 60 at 28. According to SID 596, until the condemnation proceeding is resolved, no taking has occurred. Filing 60 at 28. The Court rejects both arguments and denies SID 596's Motion for Partial Summary Judgment.

The Just Compensation Clause of the Fifth Amendment, as applied to the states through the Fourteenth Amendment, provides that private property shall not "be taken for public use[] without just compensation." U.S. Const. amend. V; *see also* Neb. Const. art. I, § 21 ("The property of no person shall be taken or damaged for public use without just compensation therefor."). "The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). However, "[G]overnment regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster." *Id.* "[W]here government requires an owner to suffer a permanent physical invasion of her property—however minor—it must provide just compensation." *Id.* at 538. Under both Nebraska law and federal law, a leaseholder is entitled to just compensation when the government effectuates a taking. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002) ("[C]ompensation is mandated when a leasehold is taken and the government occupies the property for its own purposes, even though that use is temporary."); *Nebraska v. Platte Valley Pub. Power & Irr. Dist.*, 23 N.W.2d 300, 308 (Neb. 1946) ("The general rule is that [i]f a leasehold interest is taken, or injured, the lessee is entitled to a sum which will restore the money loss consequent to the taking or injury." (internal quotation marks and citation omitted)).

9

SID 596 first argues that that Rock Place's "sole remedy was to participate and/or intervene in the [eminent domain proceedings] and THG's Condemnation Proceeding." Filing 60 at 26. According to SID 596, an inverse condemnation proceeding is only appropriate when the condemnor takes the property without giving the condemnee the benefit of a condemnation proceeding. Filing 60 at 26 (citing *Henderson v. City of Columbus*, 827 N.W.2d 486, 491–92 (Neb. 2013) ("We have stated that inverse condemnation is a shorthand description for a landowner suit to recover just compensation for a governmental taking of the landowner's property without the benefit of condemnation proceedings.")). In this case, SID 596 claims it provided ample notice to Rock Place of its intent to condemn the part of THG Development's property in which Rock Place had a leasehold interest. Filing 60 at 19–25. Therefore, SID 596 reasons, Rock Place had a duty to intervene in one of the state court proceedings to assert its interest. Filing 60 at 26. Because Rock Place did not intervene, SID 596 concludes that Rock Place cannot now maintain an action for inverse condemnation. Filing 60 at 26.

SID 596's argument is incorrect. Rock Place did not have a duty to intervene in SID 596's eminent domain proceedings; rather, it was SID 596's duty "to ascertain the state of the title so that it may designate in its petition and make parties respondent or defendant all persons or corporations having any such interest in the property sought to be taken." *Papio-Missouri River Nat. Res. Dist. v. Willie Arp Farms, Inc.*, 739 N.W.2d 776, 783 (Neb. Ct. App. 2007) (quoting *Consumers Pub. Power Dist. v. Eldred*, 22 N.W.2d 188, 197 (Neb. 1946)). "Failure to designate in the petition and to make a party respondent the owner of any interest in the land taken whose title appears of record or is otherwise ascertainable on reasonable inquiry renders the proceedings ineffectual to transfer such interest to the condemning party." *City of Waverly v. Hedrick*, 810 N.W.2d 706, 712 (Neb. 2012). Therefore, SID 596's failure to join Rock Place in its condemnation

10

action means that Rock Place maintained its leasehold interest. Nebraska law is clear that "[i]f [a leaseholder] was damaged by [a condemnor's] taking of [a landlord's] interest in the land, then [the leaseholder] has the right to pursue a cause of action against [the condemnor] for inverse condemnation to collect such damage." *Papio-Missouri River Nat. Res. Dist. v. Willie Arp Farms, Inc.*, 739 N.W.2d 776, 783 (Neb. Ct. App. 2007). Accordingly, when SID 596 failed to join Rock Place to the condemnation proceeding, Rock Place was entitled to bring an action for inverse condemnation.

Thus, SID 596's vigorous arguments that Rock Place had notice of SID 596's eminent domain proceedings are beside the point. "[SID 596] had the right to decide whose interest it would condemn." *Willie Arp Farms*, 739 N.W.2d at 783. When SID 596 failed to join Rock Place in the eminent domain proceedings, "[Rock Place] remained the 'owner' and 'possessor' of whatever interest it had in the land at issue." *Id.* Therefore, the Court rejects SID 596's argument that Rock Place's failure to intervene precludes it from maintaining an inverse condemnation action.

SID 596's argument that no taking has occurred because THG's condemnation proceeding is still pending fares no better. According to SID 596, "[Rock Place] cannot bring an inverse condemnation claim until an actual taking has occurred, which would be after the condemnation proceeding." Filing 60 at 28. SID 596's argument appears to be based on the fact that, in Nebraska, "[o]rdinarily, the entire property involved in an eminent domain proceeding is to be valued and damages to it assessed as a whole." *Y Motel, Inc. v. State Dep't of Roads*, 227 N.W.2d 869, 872 (Neb. 1975). Because THG's condemnation proceeding, which challenges the appraisal award, is still pending, SID 596 reasons that no final valuation of the property, and thus no taking, has occurred. Filing 60 at 28.

11

However, it is not true that the fact an appeal from an appraisal award is pending means no taking has occurred. The Nebraska Supreme Court has held, "Ordinarily, a governmental taking occurs when the condemner files its condemnation petition for proceedings before appraisers appointed to determine whether the condemnee has been damaged by the governmental appropriation or taking." *Rose v. City of Lincoln*, 449 N.W.2d 522, 527 (Neb. 1989). That occurred here on February 14, 2019, when SID 596 commenced its eminent-domain proceeding in state court. Filing 61-2 at 2. Thus, no final ruling on the appraisal award is necessary to find that a taking has occurred.[9] Moreover, Rock Place's claim arises from damages it allegedly suffered due to SID 596's temporary construction easement and the construction allegedly performed by SID 596, both of which have already occurred. Filing 31 at 8-10; Filing 72-1 at 3-6. SID 596 has also stipulated that, for the purposes of its Motion for Partial Summary Judgment, there is a genuine dispute over the damages Rock Place has suffered, thus precluding the Court from finding that Rock Place has not suffered any damages. Filing 81 at 12. Once SID 596 damaged Rock Place's leasehold interest, either through the construction or the temporary easement, Rock Place was entitled to bring suit for inverse condemnation. *See Slusarski v. Platte Cnty.*, 416 N.W.2d 213, 216 (Neb. 1987) ("[W]hen a political subdivision with the power of eminent domain damages property for a public use, the property owner may seek damages . . . in an action for inverse condemnation . . . ."); *Sanitary & Improvement Dist. No. 67 of Sarpy Cnty. v. Dep't of Roads*, 961 N.W.2d 796, 803 (Neb. 2021) ("Inverse condemnation is a common shorthand for a landowner's suit to recover the value of property that has been . . . damaged by the State without the benefit of condemnation proceedings."). The fact that a state court proceeding on the appraisal award is pending does not

---

[9] Nor must Rock Place wait until resolution of the state court case to bring a claim for inverse condemnation in federal court. *See Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2177 (2019) ("[B]ecause the violation is complete at the time of the taking, pursuit of a remedy in federal court need not await any subsequent state action. Takings claims against local governments should be handled the same as other claims under the Bill of Rights.").

support granting summary judgment in SID 596's favor. Accordingly, the Court finds that because Rock Place is entitled to bring an inverse-condemnation action at this time and a genuine dispute over whether it was damaged by SID 596's actions exists for the purposes of this motion, SID 596's Motion for Partial Summary Judgment must be denied.

### D. Rock Place's Motion for Rule 11 Sanctions

Rock Place filed a Motion for Rule 11 Sanctions requesting attorney fees and costs incurred filing this motion and responding to SID 596's Motion for Partial Summary Judgment. Filing 82 at 1. According to Rock Place, SID 596 reused the same arguments to support its Motion for Partial Summary Judgment that the Court rejected in its order on SID 596's Motion to Dismiss. Filing 83 at 3. SID 596 denies Rock Place's allegations and claims that its Motion for Partial Summary Judgment was not frivolous. Filing 85 at 3-10. The Court agrees with SID 596 and denies Rock Place's motion.

Rule 11 permits the court to issue sanctions when a motion is "being presented for any improper purpose," Fed. R. Civ. P. 11(b)(1); the motion's legal contentions are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," Fed. R. Civ. P. 11(b)(2); or the factual contentions or denials of factual contentions lack evidentiary support or are not "warranted on the evidence," Fed. R. Civ. P. 11(b)(3)-(4). "In determining whether a violation of Rule 11 has occurred, the district court must apply an 'objective reasonableness' standard." *Miller v. Bittner*, 985 F.2d 935, 938 (8th Cir. 1993) (citing *Nat'l Ass'n for Advancement of Colored People-Special Contribution Fund v. Atkins*, 908 F.2d 336, 339 (8th Cir. 1990)). Under this standard, the Court decides "whether a reasonable and competent attorney would believe in the merit of an argument." *Id.* at 939.

13

Rule 11 sanctions are not warranted in this case. While SID 596 was ultimately unsuccessful in its Motion for Partial Summary Judgment, there is no reason to believe that SID 596 filed it for an improper purpose or that its legal arguments were unwarranted. Although the Court finds that SID 596's arguments supporting its summary judgment motion were not persuasive, this does not justify imposing sanctions. *See Hunter v. Whisler Aviation, Inc.*, No. 8:19-CV-339, 2019 WL 7282107, at *4 (D. Neb. Dec. 27, 2019) (noting that while "several arguments raised by [the defendant] lack[ed] serious legal weight," sanctions were not warranted). Thus, Rock Place's Motion for Rule 11 Sanctions is denied.

## IV. CONCLUSION

Rock Place is entitled to bring an inverse-condemnation action at this time and a genuine dispute over whether it was damaged by SID 596's actions exists for the purposes of this motion. Thus SID 596's Motion for Partial Summary Judgment must be denied. The Court also denies SID 596's Motion to Strike and Rock Place's Motion for Rule 11 Sanctions. Accordingly,

IT IS ORDERED:

1. SID 596's Motion for Partial Summary Judgment, Filing 59, is denied;
2. SID 596's Motion to Strike, Filing 76, is denied; and
3. Rock Place's Motion for Rule 11 Sanctions, Filing 82, is denied.

Dated this 30th day of November, 2021.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge