IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

|  |  |
|---|---|
| THE ROCK PLACE II, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>SANITARY AND IMPROVEMENT DISTRICT NO. 596,<br><br>Defendant. | 8:20-CV-304<br><br>**MEMORANDUM AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT** |

## I.      INTRODUCTION

This action began as a suit by the Rock Place II, Inc., (Rock Place) against Woodsonia-204 Center, LLC, Sanitary and Improvement District No. 596 (SID 596), and members of SID 596's Board of Trustees. Following several dispositive motions, Rock Place's suit has been whittled down to an unlawful taking claim against SID 596. Before the Court is SID 596's Third Motion for Summary Judgment, Filing 139, and Rock Place's Motion for Partial Summary Judgment. Filing 136.

The Court concludes the motions filed by the parties in this case have no merit. Given this is Defendants' third motion for summary judgment, the Court questions whether this continued unnecessary and meritless motion practice constitutes an inappropriate effort to delay this case. The Court has now written no less than 71 pages of opinions in this case in less than five orders, including the present order.

1

Pursuant to the Final Progression Order filed on March 26, 2021, the deadline to file motions for summary judgment was set for February 15, 2022. Filing 54 at 2. Prior to that deadline, Defendants filed a Motion for Partial Summary Judgment, Filing 59, and another Motion for Partial Summary Judgment, Filing 64, while Rock Place filed its own Motion for Partial Summary Judgment, Filing 116. In one of its Motions, Defendants regurgitated an argument the Court squarely rejected in its Order on Defendants' Motion to Dismiss, Filing 44, and in its other Motion Defendants neglected to inform the Court that they had sovereign immunity against Rock Place's malicious-prosecution claim, Filing 126. On April 1, 2022, the parties requested an extension for *more* summary judgment motions, which the Magistrate Judge granted. Filing 131. In the interim, Rock Place filed a baseless Rule 54(b) Motion, which did not justify why the Court should permit an immediate appeal, and the Court denied that motion. Filing 133; Filing 138. The parties then filed the present motions by May 31, 2022. For the reasons stated herein, the Court denies both motions.

## II.    BACKGROUND

This case arises from SID 596's eminent-domain proceedings against THG Development, LLC, the owner of property in which plaintiff Rock Place holds a leasehold interest. THG Development, a nonparty, owns approximately 20 acres of land in Elkhorn, Nebraska. Filing 61-1 at 4. Rock Place leases this property from THG Development to operate its landscaping-supply business. Filing 72-1 at 1-2. SID 596 is a political subdivision of Nebraska located in Douglas County. Filing 61-2 at 1. Sanitary and Improvement Districts, or SIDs, are local governmental units formed under Nebraska statutes that "install and maintain public improvements such as streets, sewers, utility lines, and other improvements associated with residential and commercial subdivisions." *Sanitary & Improvement Dist. No. 67 of Sarpy Cnty. v. Dep't of Roads*, 961 N.W.2d

796, 800 (Neb. 2021). Under Nebraska law, an SID may specially assess property outside its corporate boundary via a lawsuit against the property owner if the property "has been specially benefitted" by improvements constructed by the SID. Neb. Rev. Stat. § 31-752. "Special assessments are charges imposed by law on land to defray the expense of a local municipal improvement on the theory that the property has received special benefits from the improvements in excess of the benefits accruing to property or people in general." *Bennett v. Bd. of Equalization of City of Lincoln*, 515 N.W.2d 776, 779 (Neb. 1994).

Sometime in early 2019, SID 596 began preparing to develop the land near THG Development's property. Filing 61-1 at 88. The development included extending a street and constructing an additional access drive to THG Development's property. Filing 61-1 at 38. Part of this development extended onto the portion of THG Development's property that is within SID 596's corporate boundary. Filing 61-1 at 88. Thus, SID 596 needed to condemn part of THG Development's property if it wanted to proceed with construction.

On February 14, 2019, SID 596 commenced an eminent-domain proceeding against THG Development in Nebraska state court. Filing 61-2 at 2. SID 596 sought a fee simple acquisition of about one-third of an acre of THG Development's property and a temporary construction easement of two acres. Filing 61-1 at 38, 88. However, Rock Place was not joined as a party to the eminent-domain proceeding because Defendants were purportedly unaware of Rock Place's leasehold interest. Filing 61-2 at 2–3. During the eminent-domain proceeding, SID 596 filed a petition to appoint a board of appraisers to determine the value of the part of THG Development's property being condemned. Filing 61-1 at 104. The state court granted the petition and appointed three appraisers who determined that the value of the property was $56,390.00. Filing 61-1 at 106-09, 121-22. SID 596 deposited this amount with the state court. Filing 61-1 at 131. On April 12, 2019,

THG Development appealed the appraisal to the Douglas County District Court and requested that a jury determine the fair market value of the land. Filing 61-1 at 135–37.

SID 596 constructed the infrastructure sometime in 2020. Filing 61-2 at 4. By that time, SID 596 had become aware of Rock Place's leasehold interest in THG Development's property, which lies outside SID 596's corporate boundary. Filing 61-1 at 11; Filing 61-2 at 4. SID 596's Board Members determined that the improvements constructed by SID 596 benefitted THG's property in the amount of $723,425.61. Filing 61-2 at 4. Accordingly, SID 596 initiated a special assessment suit in Nebraska state court on July 23, 2020, to recover the amount the constructed improvements benefitted THG's property. Filing 61-1 at 166–68; Filing 61-2 at 4–5. THG Development filed a separate suit in Nebraska state court to "Declare Special Assessment Determination Invalid, Illegal, and Void," which was consolidated with SID 596's special-assessment lawsuit. Filing 61-1 at 10.

During the special-assessment lawsuit, Rock Place moved to dismiss SID 596's suit against it, asserting that, under Nebraska law, special assessments may only be made against property owners, not leaseholders like Rock Place. Filing 35-9 at 1–2. The state-court judge accepted Rock Place's argument that special assessments could not be levied against leaseholders and dismissed Rock Place with prejudice from the case. Filing 61-1 at 243–47.

On July 30, 2020, Rock Place filed suit against SID 596, the members of SID 596's Board of Trustees, Woodsonia-204, and numerous unnamed individuals. Filing 1. After several dispositive motions, only Rock Place's unlawful taking claim against SID 596 remains.

While this lawsuit was ongoing, on March 14, 2022, a jury trial was held in SID 596's eminent-domain proceeding against THG Development. Filing 141-5. The jury ultimately returned a verdict matching what SID 596 argued THG Development was entitled to for the condemnation.

Filing 141-1 at 8-9. THG Development filed a motion for a new trial on which the state court held

a hearing on July 7, 2022. Filing 141-1 at 10. Neither party informs the Court of the result of that

hearing.

### III.   ANALYSIS

### A.  Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. (a). "'Only disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment.'" *Rusness v. Becker Cnty.*, 31 F.4th 606, 614 (8th Cir. 2022) (quoting *Doe*

*v. Dardanelle Sch. Dist.*, 928 F.3d 722, 725 (8th Cir. 2019), in turn quoting *Anderson v. Liberty*

*Lobby, Inc*., 477 U.S. 242, 248 (1986)). "The moving party bears the burden of showing the

absence of a genuine dispute." *Glover v. Bostrom,* 31 F.4th 601, 603 (8th Cir.) (citing Fed. R. Civ.

P. 56(a)), *reh'g denied*, No. 20-2884, 2022 WL 1564097 (8th Cir. May 18, 2022). The party

opposing summary judgment must "cit[e] particular materials in the record" or show that the

"materials cited do not establish the ... absence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). On

a motion for summary judgment, "a district court should 'not weigh the evidence, make credibility

determinations, or attempt to discern the truth of any factual issue.'" *Avenoso v. Reliance Standard*

*Life Ins. Co*., 19 F.4th 1020, 1024 (8th Cir. 2021) (quoting *Great Plains Real Est. Dev., L.L.C. v.*

*Union Cent. Life Ins*., 536 F.3d 939, 943-44 (8th Cir. 2008)). Instead, the court must view the

evidence in the light most favorable to the non-moving party and afford that party all reasonable

inferences supported by the evidence. *Grinnell Mut. Reinsurance Co. v. Dingmann Bros. Constr.*

*of Richmond, Inc*., 34 F.4th 649, 652 (8th Cir. 2022); *Pearson v. Logan Univ*., 937 F.3d 1119, 1124

(8th Cir. 2019). "The Supreme Court's 'repeated' admonition is that 'the plaintiff, to survive the defendant's [summary judgment] motion, need only present evidence from which a jury might return a verdict in his favor.'" *Doe by next friend Rothert v. Chapman*, 30 F.4th 766, 772 (8th Cir. 2022) (quoting *Anderson*, 477 U.S. at 257).

### B.  Rock Place's Motion for Partial Summary Judgment

The Court begins with Rock Place's Motion for Partial Summary Judgment. Rock Place's Motion targets one of the defenses SID 596 alleged in its amended answer to Rock Place's unlawful takings claim: that Rock Place's damages should be offset by the amount the property it leases benefitted from the improvements SID 596 constructed. Filing 106 at 11; Filing 138 at 4–9. Rock Place asserts that this same issue was litigated in state court during SID 596's special-assessment lawsuit against THG Development and Rock Place. Filing 138 at 4–9. Rock Place emphasizes that the state-court judge entered judgment in Rock Place's favor by granting its motion to dismiss because it was not an owner of the property under Nebraska's special-assessment statute. Filing 138 at 6. Therefore, Rock Place argues, SID 596's defense is barred by both claim and issue preclusion. Filing 138 at 4–9. SID 596 responds that the only issue decided by the state court was who owned the property for the purposes of levying special assessments, not whether it can offset special benefits as a defense in this action. Filing 142.

SID 596's defense in its amended answer states as follows:

Defendants deny that Plaintiff has sustained any damages including severance damages related to the Property or its lease of the Property. Defendants claim that Plaintiff has and will receive special benefits as a result of the construction of the public improvements installed by SID No. 596 as described in the SID No. 596's County Court Condemnation Petition and in its discovery. The special benefits come about because of some special relationship between the Plaintiff's lease from THG Development, who owns the remaining property, and the public improvements installed by SID No. 596. Those benefits are special to the Plaintiff (through its interests derivatively from THG Development, LLC, the fee title owner) or to the Plaintiff and its neighborhood. As such the special benefits

6

received by Plaintiff should reduce any compensation Plaintiff seeks and may be awarded for any alleged decrease in fair market value of Plaintiff's interest in the remaining property.

Filing 106 at 11. Although this pleaded defense uses the phrase "special benefits," which is similar to the term "specially benefitted" used in the statute authorizing the levying of special assessments, *see* Neb. Rev. Stat. § 31-752, it is clear that SID 596 seeks to offset Rock Place's damage for the taking by the amount the fair market value of its leasehold increased from the improvements constructed by SID 596.

Nebraska law governs whether claim preclusion and issue preclusion apply. *Schaefer v. Putnam*, 827 F.3d 766, 769 (8th Cir. 2016) ("The law of the forum that rendered the first judgment controls the res judicata analysis."). "The applicability of claim and issue preclusion is a question of law." *RM Campbell Indus., Inc. v. Midwest Renewable Energy, LLC*, 886 N.W.2d 240, 249 (Neb. 2016). Claim preclusion prevents relitigating a matter that was "directly addressed or necessarily included" in a prior adjudication if "(1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions." *Id*. "The doctrine bars relitigation not only of those matters actually litigated, but also of those matters which might have been litigated in the prior action." *Hara v. Reichert*, 843 N.W.2d 812, 816 (Neb. 2014).

"Issue preclusion bars the relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate." *Hara*, 843 N.W.2d at 816 (Neb. 2014). It applies when:

> (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action.

*In re Int. of Noah B.*, 891 N.W.2d 109, 120 (Neb. 2017). Importantly, the issue must have been "actually litigated" for issue preclusion to apply. *Hara*, 843 N.W.2d at 816 ("Issue preclusion applies only to issues actually litigated.").

Rock Place argues that whether special benefits can be used to offset its damages was litigated and resulted in a final judgment on the merits in its favor. The Court disagrees. The only issue before the state-court judge during the special assessment lawsuit was whether Rock Place was "the owner of [the specially benefitted] property" under the statute authorizing the levying of special assessments. *See* Neb. Rev. Stat. § 31-752. In this case, SID 596 seeks to offset Rock Place's damages by the amount the improvements SID 596 constructed raised the fair market value of Rock Place's leasehold. Although the issue is not directly before the Court, it appears that under both Nebraska and Federal takings law this is a valid defense. [1] *See Hike v. State Dep't of Roads*,

---

[1] SID 596 states, as it has in prior briefing, that it attempted to levy a special assessment on Rock Place, despite Rock Place being a leaseholder rather than a property owner, because the phrase "the owner of [the specially benefitted] property" in the special assessments statute is not defined and could apply to a leaseholder. Having heard this argument before, the Court feels compelled to explain that this would be an unreasonable reading of the special assessments statute. The law makes a clear distinction between leaseholders and property owners. *See, e.g., Brown v. Jacobsen Land & Cattle Co.*, 924 N.W.2d 65, 71 (Neb. 2019) "([E]ntering real property as part of a lease agreement is entering it with permission and with acknowledgment of the owner's superior title."); *Landmark Enterprises, Inc. v. M.I. Harrisburg Assocs.*, 554 N.W.2d 119, 122–23 (Neb. 1996) ("A tenant cannot without the authority of the landlord charge the land with a lien for materials for constructing or improving a building thereon, and the tenant is not the landlord's agent for this purpose, even if the tenant has the landlord's consent."); *Application of City of Lincoln*, 120 N.W.2d 297, 303 (Neb. 1963) (describing a lease as "a contract for the possession and profits of land and tenements"). This distinction is present in the context of challenging special assessments. In *County of Red Willow v. City of McCook*, 499 N.W.2d 531 (1993), the Nebraska Supreme Court held that only a property owner, defined as the holder of the real estate title, could collaterally attack a special assessment. *See Cnty. of Red Willow v. City of McCook*, 499 N.W.2d 531, 535 (Neb. 1993) ("[W]e hold that for the purpose of collaterally attacking a special assessment, it must be done by a property owner, the holder of the legal title to the real estate, as distinguished from mortgagees or other lienholders."). Likewise, in *Easley v. City of Lincoln*, 330 N.W.2d 130 (Neb. 1983), the Nebraska Supreme Court considered whether leaseholders in a proposed business improvement district could object to the creation of the district as "owners" of "assessable units" under Nebraska Revised Statute § 19-4027. *See Easley v. City of Lincoln*, 330 N.W.2d 130, 131 (Neb. 1983); *see also* Neb. Rev. Stat. § 19-4027 (stating that a business improvement district cannot be created if fifty percent of "the record owners" of assessable units in the district provide written protest). The court determined that the lessees were not "owners" of property because a lessee could only be obligated to pay special assessments by contract. *See id.* at 136 ("If the lessee obligates himself to pay assessments, it is a matter of contract by which the lessee has, as part of his bargained-for exchange, agreed to assume the risk of paying special assessments."); *see also Ittner v. Robinson*, 52 N.W. 846, 846–47 (Neb. 1892) (holding that a lessee did not have to pay special assessments when the lease only required the lessee to pay taxes on the property). For the purposes of § 31-752, therefore, "only the fee simple owner can be said to be the 'owner.'" *Id.* Rock Place, as a tenant, is not "the

899 N.W.2d 614, 621 (Neb. 2017) ("In a condemnation action, there are two elements of damage: (1) market value of the land taken or appropriated and (2) diminution in value of the land remaining, *less special benefits*.") (emphasis added); *United States v. Miller*, 317 U.S. 369, 376 (1943) ("[I]f the taking has in fact benefited the remainder the benefit may be set off against the value of the land taken."); *Bauman v. Ross*, 167 U.S. 548, 582 (1897) (holding, in the context of a Fifth Amendment takings claim, "where the special benefits equaled or exceeded the damages . . . the owner of the land receive[s] nothing").

In the current case, SID 596 does not seek to levy a special assessment on Rock Place's leasehold under Nebraska Revised Statute § 31-752. Instead, it wishes to offset Rock Place's damages based on how much the improvements benefitted Rock Place's leasehold. That issue was not actually litigated, directly addressed, or necessarily included in the special assessment lawsuit. *See Hara*, 843 N.W.2d at 816. Accordingly, Rock Place's Motion for Partial Summary Judgment is denied.

### C. SID 596's Motion for Summary Judgment

In its Motion for Summary Judgment, SID 596 argues that Rock Place cannot maintain its takings action, and instead the takings claim belongs solely to THG Development, the property owner. Filing 140 at 10–20. SID 596 has made similar arguments twice before that the Court has rejected. *See* Filing 44; Filing 100. As the Court has explained, under both Nebraska law and federal law, a leaseholder is entitled to just compensation when the government effectuates a taking. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002) ("[C]ompensation is mandated when a leasehold is taken and the government occupies the

---

owner of [the specially-benefitted] property," Neb. Rev. Stat. § 31-752, and cannot be specially assessed absent a contractual obligation to pay special assessments. Construing the statute as saying otherwise is, as a matter of law, an unreasonable interpretation. *See State v. McColery*, 919 N.W.2d 153, 157 (Neb. 2018) ("Statutory interpretation is a matter of law.").

property for its own purposes, even though that use is temporary."); *Nebraska v. Platte Valley Pub. Power & Irr. Dist.*, 23 N.W.2d 300, 308 (Neb. 1946) ("The general rule is that [i]f a leasehold interest is taken, or injured, the lessee is entitled to a sum which will restore the money loss consequent to the taking or injury." (internal quotation marks and citation omitted)). When SID 596 did not join Rock Place to the condemnation proceeding in state court, and Rock Place suffered damages from the condemnation, the law permitted Rock Place to bring its inverse-condemnation claim against SID 596. *See Sanitary & Improvement Dist. No. 67 of Sarpy Cnty. v. Dep't of Roads*, 961 N.W.2d 796, 803 (Neb. 2021) ("Inverse condemnation is a common shorthand for a landowner's suit to recover the value of property that has been . . . damaged by the State without the benefit of condemnation proceedings."); *Slusarski v. Platte Cnty.*, 416 N.W.2d 213, 216 (Neb. 1987) ("[W]hen a political subdivision with the power of eminent domain damages property for a public use, the property owner may seek damages . . . in an action for inverse condemnation . . . ."). Because the condemnation of Rock Place's leasehold interest was never brought before the state court in the condemnation proceeding, Rock Place is not precluded from seeking relief in this Court.

Nevertheless, on this third attempt, SID 596 assures the Court that it now has the silver bullet that will shoot down Rock Place's inverse-condemnation claim. SID 596 explains that the jury in the condemnation proceeding has now determined THG Development's damages for the condemnation. SID 596 then points the Court to Rock Place's lease with THG Development, which has an effective term from January 1, 2012, through January 31, 2021. That provision of the lease at issue provides:

> In the event of any taking or condemnation of the real property, in whole or in part, the entire resulting award of damages shall be the exclusive property of [THG Development], including all damages awarded as compensation for diminution in value to the leasehold, without any deduction for the value of any unexpired term

> of this Lease, or for any other estate or interest in the real property now or hereafter vested in [Rock Place].

Filing 141-1 at 27. SID 596 argues that, through this lease agreement, Rock Place assigned its right to damages from an unlawful taking to THG Development and, therefore, it is not the real party in interest in this suit. Filing 140 at 10–12. SID 596 then asserts that, because THG Development already litigated the condemnation in state court, THG Development would be barred from pursuing an inverse-condemnation claim if it were to be substituted for Rock Place in this case. Filing 140 at 12–20.

In its response to SID 596's Motion, Rock Place has filed two lease agreements it has with THG Development, one with a term from January 1, 2020, to December 31, 2020, and another with a term from January 1, 2021, to December 31, 2021. Filing 145-1 at 17–33.[2] Neither of these lease agreements contain the assignment of the condemnation award and damages provisions relied upon by SID 596. Therefore, Rock Place argues, the leases effective during the time in which SID 596 condemned its leasehold without compensation and at the time it brought this suit allow it to bring the present inverse-condemnation action. Filing 146 at 27–39.

To bring a claim, a plaintiff must be the real party in interest. *See* Fed. R. Civ. P. 17(a) ("An action must be prosecuted in the name of the real party in interest."). "The real party in interest is a party who, under governing substantive law, possesses the rights to be enforced." *Consul Gen. of Republic of Indonesia v. Bill's Rentals, Inc.*, 330 F.3d 1041, 1045 (8th Cir. 2003). As previously mentioned, under both Nebraska and federal law, leaseholders may bring inverse condemnation claims. *See Tahoe-Sierra Pres. Council*, 535 U.S. at 322; *Platte Valley Pub. Power & Irr. Dist.*, 23 N.W.2d at 308. Here, although Rock Place's original lease with THG Development

---

[2] Mike Haffke, an individual associated with both Rock Place and THG Development signed these leases on both THG Development's and Rock Place's behalf.

11

assigned its award of damages for condemnation to THG Development, this provision was removed for the leases in effect from 2020 through 2021.[3] Therefore, even assuming[4] that the provision from the original lease assigned SID 596's right to bring an inverse-condemnation action to THG Development, the operative lease at the time Rock Place brought this suit did not assign Rock Place's right to bring an inverse-condemnation action.

SID 596 argues that the original lease was in effect when it brought its condemnation action against THG Development and, therefore, the original lease prevents Rock Place's suit. But when SID 596 brought its condemnation action does not matter for the issue before the Court. There is no dispute that Rock Place was a tenant on the property condemned by SID 596. As a tenant, it is entitled to just compensation for the damages resulting from the condemnation. Its claim for inverse condemnation, wholly separate from THG Development's claim, did not become invalid simply because, at the time, its lease stated that any award of damages would be the property of THG Development. Once Rock Place entered into a new lease without this provision, it could bring the present suit.

Lacking any further arguments on this point, SID 596 falls back on its old standby: that the "undivided fee rule" prevents Rock Place from having a separate claim for the condemnation. Filing 147 at 15. The Court has addressed this argument twice before and, for the reasons expressed

---

[3] SID 596 has not argued that the 2020 and 2021 leases are invalid or that the original lease is the operative one.

[4] The Court further notes that it is not altogether clear that the provision from the original lease removed Rock Place's ability to assert a takings claim. At least when it comes to rights under a contract, there is a difference between an assignment of damages and an assignment of an entire claim. *See Millard Gutter Co. v. Cont'l Cas. Co.*, No. 8:18-CV-527, 2020 WL 4220103, at *3 (D. Neb. July 23, 2020) ("There is a clear distinction between the assignment of a claim and the assignment of the proceeds of a claim."), *aff'd*, 9 F.4th 711 (8th Cir. 2021). Moreover, the Supreme Court has recognized that an assignee for collection purposes only "may properly sue on the assigned claim in federal court," *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 284, 128 S. Ct. 2531, 2541, 171 L. Ed. 2d 424 (2008), meaning that one who does not ultimately receive the damages for the sued-upon claim is not necessarily barred from bringing suit. And while it is true that a provision providing for the automatic termination of a lease upon a taking of the property extinguishes any claim by the tenant for that taking, *see United States v. Petty Motor Co.*, 327 U.S. 372, 375–76 (1946), Rock Place's original lease contains no such provision. The Court need not decide the difficult issue of whether the original lease would bar Rock Place's suit, however, because the original lease was not in effect at the time Rock Place brought its suit.

in its past orders, rejects this argument.[5] Filing 44; Filing 100. SID 596's continual resurrection of this argument prompts the Court to question SID 596's strategy, where there are other arguments at its disposal, such as equitable estoppel if Rock Place indeed intentionally hid its tenancy, that for unknown reasons SID 596 does not raise. The "undivided fee" argument SID 596 presents in support of its summary judgment motion is meritless. Therefore, the Court denies SID 596's Motion for Summary Judgment.

## IV.    CONCLUSION

Both Rock Place's and SID 596's motions lack merit and are denied. Accordingly,

IT IS ORDERD:

1.  Rock Places Motion for Partial Summary Judgment, Filing 136, is denied; and

2.  SID 596's Motion for Summary Judgment, Filing 139, is denied.

Dated this 30th day of September, 2022.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge

---

[5] SID 596's "undivided fee rule" argument asserts that because property is valued as a whole in a condemnation proceeding and divvied up amongst those with a property interest, Rock Place must seek relief in the state-court condemnation proceeding. This argument is nonsense because the only property interest valued in the condemnation proceeding was THG Development's fee simple interest, not Rock Place's leasehold interest. Rock Place's leasehold interest was never considered because SID 596 *did not join it to the condemnation proceeding*. SID 596's refusal to understand the basic point that Rock Place has, at least on paper, a separate property interest that is entitled to just compensation is, frankly, baffling.